IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


THERESA D'JAMOOS, as Executrix:   CIVIL ACTION
of the Estate of Dawn          :
Elizabeth Weingeroff, et al.   :
                               :
                               :
v.                             :
                               :   NO. 07-1153
                               :   CONSOLIDATED ACTION
PILATUS AIRCRAFT LTD., et al. :


MEMORANDUM AND ORDER

McLaughlin, J.                          April 30, 2008


        The plaintiffs represent the estates of six people

killed in a plane crash near State College, Pennsylvania, on

March 26, 2005.  The defendants manufactured the plane and some

of its components.  The plaintiffs allege that the plane's

systems and components were defective, and that the failure of

one or more of the plane's systems and components caused the

crash.  Defendant Pilatus Aircraft Ltd. ("Pilatus"), which

manufactured the plane, has moved to dismiss the plaintiff's

complaint for lack of personal jurisdiction.  The plaintiffs have

filed a motion to transfer the case to the Federal District of

Colorado.  The Court will grant Pilatus's motion to dismiss and

deny the plaintiff's motion to transfer.  The Court will also

grant Pilatus's motion to dismiss the cross-claims of its co-

defendants Rosemount Aerospace, Inc. and Goodrich Corporation.

I.   Facts

On March 26, 2005, the pilot and five passengers boarded a single-engine turbo-prop plane in Naples, Florida, bound for the University Park Airport in State College, Pennsylvania.  Jeffrey Jacober piloted the plane, and the passengers were Dawn Elizabeth Weingeroff, Gregg C. Weingeroff, Leland Weingeroff, Eric Jacober, and Karen Jacober.  Jeffrey Jacober lost control of the aircraft during the approach to University Park Airport.  All six people on board were killed in the crash.  Cons. Compl. ¶ 46, 48.

Defendant Pilatus[1], a Swiss corporation, manufactured the Pilatus PC-12 with serial number 299 in Switzerland in 1999.  Pilatus sold the plane to a French company, which sold it to a Swiss company.  The plane's Swiss owners requested that Pilatus perform some maintenance on the plane in Switzerland.  The Swiss owners then sold it to a Massachusetts company, which sold the plane to a Rhode Island LLC, which owned the plane at the time of the crash.  The six people killed in the crash were Rhode Island citizens.  Id. ¶¶ 1, 19-22, 24; Def.'s Mot. to Dismiss Br. Ex. A, Affirm. of John Senior ¶¶ 22-23.[2]

---

[1]     Pilatus is a single entity sued under both its English and German names (Pilatus Aircraft, Ltd., and Pilatus Flugzeugweke Aktiengesellschaft).

[2]     Hereafter "Def.'s Br."

Pilatus has been building single-engine planes at its headquarters in Stans, Switzerland, since 1939.  It currently makes and sells two general aviation products, the PC-6 and the PC-12.  Pilatus has no offices or employees in the United States, and it does not advertise its products in the United States.  It has three subsidiaries, one of which is in the United States: Pilatus Business Aircraft, Ltd. ("PilBAL").  PilBAL is located in Broomfield, Colorado, and markets and sells PC-12 planes throughout the Western hemisphere.  PilBAL purchases PC-12s from Pilatus and sells them to a network of independent dealers. These dealers then market and sell the planes to retail customers.  The PilBAL dealer that serves the Mid-Atlantic region, including Pennsylvania, is called SkyTech, Inc., and is located in Baltimore, Maryland.  Def.'s Br. Ex. A ¶¶ 3, 5, 6-8(c), 10, 13-14, 18.

According to Pilatus, it has had two direct contacts with Pennsylvania.  In the early 2000s, Pilatus sent two engineers to visit Innovative Solution & Support in Exton, Pennsylvania, to investigate whether it might be a good source for displays.  Pilatus did not select the company as a supplier. Pilatus has also purchased goods and services from Pennsylvania, with expenses ranging from approximately $120,000 per year to $330,000 per year for the past five years.  This accounts for

less than 1% of Pilatus's purchases in each of the last five years.  Id. ¶¶ 17-18.

In order to receive Federal Aviation Administration ("FAA") certification that would allow the plane to be registered and flown in the United States, Pilatus equipped its PC-12 planes with a stick-pusher system that is supposed to prevent the plane from stalling and entering a spin.  A spin creates a significant risk of loss of control and crashing.  The FAA issued a Type Certificate for the Pilatus PC-12 planes requiring them to be equipped with a stick-pusher system.  The subject aircraft had such a system.  Cons. Compl. ¶¶ 15-18.

The plaintiffs allege that the plane crashed because of the failure of the stick-pusher system and/or the plane's other components or systems.  The other defendants manufactured these other components or systems:  Rosemount Aerospace, Inc. ("Rosemount") designed and manufactured the angle-of-attack transmitters, which detect and transmit data to the stick-pusher computer; Goodrich Avionics Systems, Inc. and/or its successor, L-3 Communications Corporation ("Goodrich Avionics defendants"), designed and manufactured the stick-pusher servo, which performs the stick-pushing function; and Goodrich Corporation designed and

4

manufactured the de-icing system for the subject aircraft.[3]  Id.
¶¶ 27-45.

The plaintiffs assert wrongful death, survival, and
punitive damages counts against all of the defendants.  On March
22, 2007, the plaintiffs filed six separate actions against the
defendants alleging negligence, products liability, and breach of
warranty.  On November 19, 2007, pursuant to the Court's
consolidation order, the plaintiffs collectively filed a
consolidated complaint.  Defendant Pilatus has moved to dismiss
the consolidated complaint.

II.  Pilatus's Motion to Dismiss

Defendant Pilatus has filed a motion to dismiss for
lack of personal jurisdiction, or alternatively, motion to
dismiss for failure to state a claim, motion for a more
definitive statement, and motion to strike.  Because the Court
will grant the motion to dismiss for lack of personal
jurisdiction, it will not address the alternative grounds for
dismissal.

---

[3]     The consolidated complaint names two other defendants:
Revue Thommen AC and EMCA.  Revue Thommen AC and EMCA were
dismissed without prejudice in December of 2007 (Docket Nos. 34
and 35).  At the oral argument on March 6, 2008, the plaintiffs'
counsel said that the plaintiffs intended to dismiss Goodrich
Corporation and that a stipulation would be forthcoming.  No such
stipulation has been entered on the docket, and the Court will
proceed on the assumption that Goodrich Corporation is still a
defendant.  Oral Arg. Tr. at 56-57, Mar. 6, 2008.

A.   <u>Legal Standard</u>

In deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(2), the Court accepts all of the plaintiff's allegations as true and construes disputed facts in favor of the plaintiff. <u>Pinker v. Roche Holdings Ltd.</u>, 292 F.3d 361, 368 (3d Cir. 2002). Once a defendant has raised a jurisdictional defense, however, the burden shifts to the plaintiff to prove, by a preponderance of the evidence, that jurisdiction exists in the forum state. <u>IMO Indus., Inc. v. Kiekert AG</u>, 155 F.3d 254, 257 (3d Cir. 1998); <u>Carteret Sav. Bank. F.A. v. Shushan</u>, 954 F.2d 141, 146 (3d Cir. 1992). The plaintiff may not rest solely on pleadings to satisfy its burden. <u>Carteret</u>, 954 F.2d at 146. The plaintiff must present a prima facie case with evidence that demonstrates, with reasonable particularity, a sufficient nexus between the defendant and the forum state. <u>Miller Yacht Sales, Inc. v. Smith</u>, 384 F.3d 93, 97 (3d Cir. 2004); <u>Mellon Bank v. Farino</u>, 960 F.2d 1217, 1223 (3d Cir. 1992).


B.   <u>Personal Jurisdiction</u>

To exercise personal jurisdiction over a defendant, a federal court sitting in diversity makes a two-step inquiry. First, it looks to whether the state long-arm statute allows the exercise of personal jurisdiction. The court then determines if the exercise of jurisdiction comports with the Due Process Clause

of the Constitution.  <u>IMO Indus.</u>, 155 F.3d at 258-59; <u>Pennzoil</u>
<u>Prods. Co. v. Collelli & Assocs., Inc.</u>, 149 F.3d 197, 200 (3d
Cir. 1998).

Under Rule 4(k) of the Federal Rules of Civil
Procedure, a federal district court may assert personal
jurisdiction over a nonresident of the state in which the court
sits to the extent authorized by the law of that state.  <u>See</u>
<u>Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n</u>, 819 F.2d
434, 437 (3d Cir. 1987); Fed. R. Civ. P. 4(k)(1)(A).
Pennsylvania law provides for jurisdiction "to the fullest extent
allowed under the Constitution of the United States" and "based
on the most minimum contact with [Pennsylvania] allowed under the
Constitution of the United States."  42 Pa. Cons. Stat. §
5322(b).

Under the Due Process Clause, a court may not exercise
jurisdiction over a nonresident defendant unless there are
minimum contacts between the defendant and the forum state "such
that the maintenance of suit does not offend traditional notions
of fair play and substantial justice."  <u>Int'l Shoe Co. v. Wash.</u>,
326 U.S. 310, 316 (1945); <u>Remnick v. Manfredy</u>, 238 F.3d 248, 255
(3d Cir. 2001).

Pilatus has moved to dismiss the complaint for lack of
personal jurisdiction.  The plaintiffs contend that the Court has
both specific jurisdiction and general jurisdiction over Pilatus.

The Court finds that it has neither specific nor general jurisdiction over Pilatus and will grant the motion to dismiss.

### 1. <u>Specific Jurisdiction</u>

Specific jurisdiction exists when a defendant has purposely directed his activities at the forum state and the claim arises from or relates to that conduct. <u>Marten v. Godwin</u>, 499 F.3d 290, 296 (3d Cir. 2007); <u>Mellon Bank (East) PSFS, Nat'l Assoc. v. Farino</u>, 960 F.2d 1217, 1220 (3d Cir. 1992).

Pennsylvania's long arm statute has a "tort out/harm in" provision which extends personal jurisdiction over a person who causes harm or tortious injury in the Commonwealth by an act or omission outside of the Commonwealth. 42 Pa. Cons. Stat. § 5322(a)(4). This section applies to parties who are not within the general jurisdiction statute. <u>Id.</u> at (b). Pilatus and the plaintiffs agree that section 5322(a)(4) applies in this case: the plaintiffs allege that Pilatus has caused harm in Pennsylvania (the plane crash) by acts or omissions outside of Pennsylvania (the flawed manufacture and/or design of the plane in Switzerland).[4] Def.'s Reply at 4; Pls.' Opp. at 2.

After a court determines that section 5322(a)(4) of the long-arm statute applies, it must still determine whether due

---

[4] <u>Pennzoil</u> clarified that the statute applies to negligence and recklessness, as well as to intentional torts. 149 F.3d at 201.

process is satisfied:  does the party have minimum contacts with the forum and would the exercise of jurisdiction comport with notions of fair play and substantial justice.  See Pennzoil, 149 F.3d at 202 ("We cannot presume that jurisdiction is proper simply because the requirements of a long-arm statute have been met.").

The Pennzoil court cautioned that the minimum contacts question turns on the quality and nature of a defendant's activity in relation to the forum.  The court observed that if a nonresident defendant's contact with the forum was merely fortuitous or the result of a single transaction, the minimum contacts requirement was not satisfied.  Id. at 203 (citing Max Daetwyler Corp. v. R. Meyer, 762 F.2d 290, 298 (3d Cir. 1985)).  In cases where the production or sale of goods is at issue, the court held that the "mere foreseeability" that a product one sells might end up in the forum state does not render the seller amenable to suit there.  Id. (citing Renner v. Lanard Toys Ltd., 33 F.3d 277, 279 (3d Cir. 1994)).  A minimum contacts finding demands an act by which the defendant "purposefully availed itself of the privilege of conducting business within the forum State, thus invoking the protection and benefits of its laws." Id. (quotations omitted).

The plaintiffs argue that the Court should find specific jurisdiction over Pilatus under a stream of commerce

theory.  The stream of commerce theory is used in products liability cases when a product's seller has not come in direct contact with the forum state but does so through retailers, distributors, and other intermediaries.  A court may exercise jurisdiction over a nonresident defendant that "injected its goods, albeit indirectly, into the forum state" and either derived a substantial benefit from the forum or had a reasonable expectation of driving a substantial benefit from it.  <u>Pennzoil</u>, 149 F.3d at 203-04; <u>Max Daetwyler</u>, 762 F.2d at 300; <u>Simeone v. Bombardier-Rotax GMBH</u>, 360 F. Supp. 2d 665, 670 (E.D. Pa. 2005).

In <u>Asahi Metal Indus. Co., Ltd. v. Super. Ct. of Cal., Solano County</u>, 480 U.S. 102, 112, 117 (1987), the United States Supreme Court presented three different tests for purposeful availment through the stream of commerce (Justices O'Connor and Brennan each wrote for pluralities of four, and Justice Stevens wrote a concurrence).  The <u>Pennzoil</u> court applied the two <u>Asahi Metal</u> plurality standards in its stream of commerce analysis. The first, Justice O'Connor's standard, requires that the placement of a product in the stream of commerce be accompanied by additional conduct of the defendant that indicates an intent or purpose to serve the market in the forum state.  The second, Justice Brennan's standard, requires that a defendant place goods in the stream of commerce and benefit economically from the sale

of the final product in the forum state.  Asahi Metal, 480 U.S.
at 112, 117; Pennzoil, 149 F.3d at 206-07.

By either of these standards, the Pennzoil court held,
the defendant had purposefully availed himself of the laws of
Pennsylvania.  The defendant sold a solvent to crude oil
producers in Ohio.  The oil producers sold the oil to refineries,
including the plaintiff's refinery in Pennsylvania, and the
plaintiff claimed that its equipment was damaged by the solvent.
Most of the oil from the Ohio producers was sold to Pennsylvania
refineries, the defendant knew that the oil was going to
Pennzoil's refinery, and the defendant had previously sent
samples of its solvents to laboratory personnel at the Pennzoil
refinery to preclude contamination problems.  The court concluded
that under either the O'Connor or Brennan tests, the defendant
had purposefully availed itself of the laws of Pennsylvania by
deriving financial benefit from its customers' sale of crude oil
to refineries in Pennsylvania.  Pennzoil, 149 F.3d at 206-07.

According to the plaintiffs, Pilatus is subject to
jurisdiction under Pennzoil because it placed its aircraft into
the stream of commerce with the intent to exploit the United
States market.  Pilatus manufactured the subject aircraft in
Switzerland and sold it to a French company, which resold it to a
Swiss company, which resold it to a Massachusetts company, which
resold it to a Rhode Island company, which owned the plane at the

11

time of the crash.  Pilatus was not involved in any of the re-
sales of the plane.  It has no physical presence in Pennsylvania
and has made no direct sales of any of its products to
Pennsylvania in the last five years.  Pilatus has had two direct
contacts with Pennsylvania in the last five years:  two Pilatus
engineers visited a company in Exton, Pennsylvania to see if it
could supply Pilatus with displays; and Pilatus has purchased
equipment and services from Pennsylvania amounting to less than
1% of its total purchases for each year of the last five years.
Def.'s Br. at 4, Ex. A ¶¶ 16.

        The plaintiffs cite World-Wide Volkswagen Corp. v.
Woodson, 444 U.S. 286, 297 (1980), to support their contention
that when a foreign corporation establishes a marketing scheme
and distribution system to target United States citizens as the
principal purchasers of its products, it has clear notice that it
is subject to suit.  In Woodson, however, the United States
Supreme Court held that a retail car dealer and local distributor
that served New York, New Jersey, and Connecticut was not subject
to jurisdiction in Oklahoma because a single car sold by the
dealer to a New York resident happened to suffer an accident
while driving through Oklahoma.  Without evidence that the
defendants tried to serve the Oklahoma market, the single,
isolated incident was insufficient to support jurisdiction.  This
single, isolated incident involving a product that Pilatus sold

12

in Europe is not enough to support jurisdiction in Pennsylvania.

Pilatus does not have the minimum contacts with Pennsylvania necessary to comply with due process requirements under the Constitution.  It has not purposefully availed itself of the privilege of conducting business within Pennsylvania. Under either of the <u>Asahi</u> stream of commerce tests laid out in <u>Pennzoil</u>, Pilatus has not injected its goods into the forum state with a reasonable expectation of deriving a substantial benefit.

Under Justice O'Connor's test, placement of a product into the stream of commerce must be accompanied by additional conduct that may indicate an intent or purpose to serve the market in the forum state, including designing the product for that market, advertising in the forum, establishing channels to provide regular advice to customers in the forum, or marketing the product through a distributor who has agreed to serve as a sales agent in the forum.  <u>Asahi Metal</u>, 480 U.S. at 112.  Pilatus has done none of these things:  it does not design its planes for customers in Pennsylvania or provide them with advice; it does not advertise in Pennsylvania; and it does not market its planes through a distributor which has agreed to act as a sales agent in Pennsylvania.

Pilatus does not meet Justice Brennan's less stringent stream of commerce test from <u>Asahi Metal</u>.  Justice Brennan wrote that as long as a participant in the distribution chain is aware

that the final product is being marketed in the forum state, the possibility of a lawsuit should not be a surprise.  He concluded that a defendant who has placed goods in the stream of commerce and benefits economically from the retail sale of the final product in the forum state may be subject to jurisdiction whether or not the defendant directly conducts business there.  <u>Asahi Metal</u>, 480 U.S. at 117.  Pilatus's business involves selling PC-12 planes outright to PilBAL, its subsidiary.  PilBAL then sells the planes to independent dealers, including SkyTech.  The dealers handle sales to retail buyers by separate contract.  Neither Pilatus nor PilBAL are aware of the sales to retail buyers that take place after the dealers buy the planes, and neither Pilatus nor PilBAL have sold any new or used Pilatus aircraft in Pennsylvania in the last five years.  Pilatus, PilBAL, and SkyTech do not have any physical presence or connection to Pennsylvania:  Pilatus is in Switzerland; PilBAL is in Colorado; and SkyTech is in Maryland.  Pilatus is not the first link in a supply chain of products destined for Pennsylvania; rather, it is several degrees removed from an independent dealer who has sold several planes – not including the subject aircraft – to individual retail customers in Pennsylvania.[5]  Def.'s Reply Br. Ex. B ¶¶ 6, 8, 12.

---

[5]     Pilatus does not keep track of the number of PC-12s that SkyTech has sold, but a review of its owner-operator list shows that six PC-12s currently have an owner-operator address in

14

        In Pennzoil, the defendant knew when he sold solvents
to Ohio oil producers that most of the oil would be sold to
Pennsylvania refineries, including Pennzoil.  He also had a
history of problems with the plaintiff refinery and sent samples
of solvents to that refinery to preclude future problems.
Pennzoil, 149 F.3d at 206.  This is a very different situation
from the instant case, in which a foreign corporation sold its
product in Europe, and the product, through repeated resales
wholly disconnected from the manufacturer, made its way to the
United States, where its final sale took it to Rhode Island.

        The stream of commerce tests for minimum contacts are
therefore not entirely apposite in this case, because the subject
aircraft did not enter Pennsylvania through any stream of
commerce.  The plane's only connection to Pennsylvania was that
it was flying over Pennsylvania and attempting to land at a
Pennsylvania airport when it crashed.  As discussed above,
Pilatus sold the subject plane in Switzerland in 1999; subsequent
owners then sold and re-sold the plane in Europe and the United
States several times before the crash.  There is no evidence that
Pilatus knew that the plane might end up in Rhode Island, the
location of the plane's final owners, much less that the plane
would wind up crashing while flying over Pennsylvania, a state to
which Pilatus had only the most fleeting connections.  See

Pennsylvania.  Def.'s Reply Br. Ex. B. ¶ 12.

Simeone v. Bombardier-Rotax GMBH, 360 F. Supp. 2d 665, 672 (E.D. Pa. 2005) (holding that although the defendant did have an extensive distribution network that would subject it to jurisdiction in Pennsylvania, the product in question did not reach Pennsylvania through that network, and therefore there was not a sufficient nexus between the defendant and Pennsylvania to subject the defendant to specific jurisdiction).

Specific jurisdiction exists where a defendant purposefully directs his activities at a forum and the harm arises out of or is related to those activities.  B.P. Chems. Ltd. v. Formosa Chem & Fibre Corp., 229 F.3d 254, 259 (3d Cir. 2000).  The plaintiffs argue that an allegation under 42 Pa. Cons. Stat. § 5322(a)(4), the "tort out, harm in" provision of the Pennsylvania long-arm statute, is sufficient to establish specific jurisdiction.  Pl.'s Sur-Reply Br. at 4.  They cite Pennzoil for the proposition that the statute "simply extends jurisdiction to anyone that causes harm or tortious injury . . . in Pennsylvania through acts or omissions outside Pennsylvania." Pennzoil, 149 F.3d at 201-02.  This is certainly true as far as it goes; the Pennzoil court also said that courts "cannot presume that jurisdiction is proper simply because the requirements of a long-arm statute have been met."  Id. at 202.

Both parties agree that the long-arm statute is satisfied and that section 5322(a)(4) is the applicable section.

16

The minimum contacts analysis, though, turns on the quality of a defendant's activity in relation to the forum state.  <u>Max Daetwyler Corp. v. Meyer</u>, 762 F.2d 290, 298 (3d Cir. 1985).  Pilatus put the subject aircraft into the stream of commerce with no knowledge that it might wind up in Pennsylvania.  Pilatus extracted no economic benefit from the sale of the subject aircraft in Pennsylvania; the aircraft was never sold in Pennsylvania.  The final sale, many steps removed from Pilatus, brought the plane to Rhode Island.  The United States Court of Appeals for the Third Circuit has repeatedly cautioned that a fortuitous contact will not satisfy the minimum contacts requirement, and with regard to producers and sellers of goods, the "mere foreseeability" that a product may end up in the forum state does not render the seller amenable to suit there.  <u>Id.</u> at 295; <u>Pennzoil</u>, 149 F.3d at 203 (citing <u>Renner v. Lanard Toys Ltd.</u>, 33 F.3d 277, 279 (3d Cir. 1994)).

        Pilatus does not have the required minimum contacts with Pennsylvania to sustain a finding of specific jurisdiction.

        2.    <u>General Jurisdiction</u>

        General jurisdiction allows a party to be haled into court in a forum whether or not the cause of action has any connection to the forum.  For a court to have general jurisdiction over a nonresident party, the party's contacts with

the forum must be continuous and systematic, and the contacts must be a central part of the defendant's business.  Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414-15 & n.8 (1984); Marten v. Godwin, 499 F.3d 290, 296 (3d Cir. 2007); Pennzoil, 149 F.3d at 200; Provident Nat'l Bank v. Cal. Fed. Savings & Loan Assoc., 819 F.2d 434, 437-38 (3d Cir. 1987).  The Pennsylvania general jurisdiction statute allows for the exercise of general personal jurisdiction over corporations "carrying on a continuous and systematic" business in Pennsylvania.  42 Pa. Cons. Stat. § 5301.

Neither Pilatus nor its subsidiary in the United States, PilBAL, have continuous and systematic contacts with Pennsylvania sufficient for general jurisdiction.[6]  Neither Pilatus nor PilBAL has a physical presence, mailing address, phone number, employee, shareholder, or bank account in Pennsylvania.  Neither company has owned or leased real property, filed taxes, or incorporated in Pennsylvania.  Neither Pilatus

---

[6]    PilBAL is a wholly owned subsidiary of Pilatus.  A subsidiary is considered the alter ego of its parent only if the parent exercises control over the subsidiary's activities. Simeone v. Bombardier-Rotax GmbH, 360 F. Supp. 2d 665, 675 (E.D. Pa. 2005); Arch v. Am. Tobacco Co., 984 F. Supp. 830, 837 (E.D. Pa. 1997).  The Court need not conduct a full alter ego analysis under Pennsylvania law because neither Pilatus nor PilBAL has enough contacts with Pennsylvania for the Court to exercise personal jurisdiction.  Even if the Court were to find that PilBAL was the alter ego of Pilatus, the jurisdictional decision would be the same.  The Court will analyze whether PilBAL is an alter ego of Pilatus under Colorado law when it addresses the plaintiff's motion to transfer, below.

nor PilBAL has advertised in Pennsylvania (PilBAL has advertised in the United States through advertisements in magazines with nationwide circulation). See BP Chem. Ltd., 229 F.3d at 254 (concluding that a foreign corporation that exported products to the United States but had no personnel or facilities and did not solicit business here did not have continuous and systematic contacts); Kimball v. Countrywide Merchant Servs., No. 04-3466, 2005 WL 318752, at *3 (E.D. Pa. Feb. 8, 2005) (finding that the defendants lacked continuous and systematic contacts because of minimal sales in Pennsylvania, no employees or advertising in Pennsylvania, and no ownership of property in Pennsylvania). Def.'s Reply Br. Ex. A, Senior Aff. ¶¶ 9-10; Ex. B, Geisshuesler Aff. ¶ 14.

Neither company has made any direct sales to Pennsylvania in the last five years: Pilatus sells planes to PilBAL, in Colorado, and PilBAL sells planes to a series of independent distributors serving various regions in the Western hemisphere, including SkyTech. SkyTech serves the Mid-Atlantic region of the United States, including Pennsylvania, but is located in Maryland. Foreign companies are not insulated from the acts of their independent distributors in a specific jurisdiction analysis, but general jurisdiction requires greater contacts with the forum state. Sales by an independent distributor do not normally constitute contacts of a

manufacturer.  See Keunzle v. HTM Sport-Und Freizeitgerate AG,
102 F.3d 453, 458 (10th Cir. 1996); see also Cambridge Literary
Prop., Ltd. v. W. Goebel Porzellanfabrik G.m.b.H., 295 F.3d 59,
63 n.3 (1st Cir. 2002) (noting that sales by an independent
distributor or a separately incorporated subsidiary do not
typically constitute contacts of the manufacturer or the parent
corporation).  SkyTech is a contracted party otherwise
unaffiliated with Pilatus or PilBAL.  The dealer agreement
between PilBAL and SkyTech stipulates that SkyTech cannot bind or
represent PilBAL and that the parties are independent
contractors.  In BP Chem. Ltd. v. Formosa Chem. & Fibre Corp.,
229 F.3d 254, 261 (3d Cir. 2000), the United States Court of
Appeals for the Third Circuit found that contracting with an
entity in the forum was not sufficient to establish minimum
contacts.  Def.'s Reply Br. Ex. A, Senior Aff. ¶¶ 10-12; Ex. B,
Geisshuesler Aff. at ¶ 8.

        The plaintiffs argue that the Court has general
jurisdiction over Pilatus because PilBAL is in the United States
and coordinates the marketing, sales, and servicing activities
for the PC-12 aircraft in the Western hemisphere.  The plaintiffs
also claim that the United States is the single largest market
for the PC-12 model, there are 630 PC-12 aircraft registered in
the United States, including seven in Pennsylvania, and PilBAL

generates the largest share of the Pilatus Group's revenue.
Pl.'s Opp. at 2-3.

There are two major problems with the plaintiffs'
analysis.  First, the plaintiffs focus on Pilatus's contacts in
the United States as a whole, rather than its contacts with
Pennsylvania.  PilBAL is in Colorado, not Pennsylvania, and the
distributor it contracts with to sell the planes is in Maryland.
The plaintiffs seek to turn Pilatus's contacts with other states
into jurisdiction in Pennsylvania.  These national contacts are
not relevant to the personal jurisdiction analysis in a diversity
case.  The United States Court of Appeals for the Third Circuit
has held that the national contacts test applies in federal
question cases where the federal statute at issue allows for
nationwide service of process.  Max Daetwyler Corp. v. Meyer, 762
F.2d 290, 297 (3d Cir. 1985).  In diversity cases it is the
defendant's contacts with the forum state, rather than with the
United States as a whole, that are relevant to the personal
jurisdiction analysis.  See, e.g., Reers v. Deutsche Bahn AG, 320
F. Supp. 2d 140, 155 (S.D.N.Y. 2004).

The second problem with the plaintiffs' analysis is
that it seeks to inject the stream of commerce theory into the
general jurisdiction context.  The stream of commerce theory,
discussed above in the analysis of specific jurisdiction, is a
means of sustaining jurisdiction in products liability cases in

which the product has traveled through a distribution chain
before reaching the consumer.  See Renner v. Lanard Toys Ltd., 33
F.3d 277, 280 (3d Cir. 1994).  The plaintiffs claim that general
jurisdiction exists over Pilatus because Pilatus products wind up
in Pennsylvania through a distribution chain.  The stream of
commerce theory, however, provides no basis for exercising
general jurisdiction over a nonresident defendant.  See Purdue
Research Found. v. SanofiSythelabo, S.A., 338 F.3d 773, 788 (7th
Cir. 2003); Alpine View Co. Ltd. v. Atlas Copco AB, 205 F.3d 208,
216 (5th Cir. 2000) ("We have specifically rejected a party's
reliance on the stream of commerce theory to support asserting
general jurisdiction over a nonresident defendant."); Simeone v.
Bombardier-Rotax GmbH, 360 F. Supp. 2d 665, 673-74 (E.D. Pa.
2005).

     Pilatus's direct connections to Pennsylvania are
limited to minimal purchases from suppliers in the state (less
than 1% of Pilatus's total purchases annually) and a trip to
investigate whether a Pennsylvania company would be able to
supply Pilatus with displays.  Def.'s Br. Senior Aff. ¶ 17.  In
Helicopteros, the United States Supreme Court held that a
defendant's major purchases (almost 80% of its total purchases)
and regular employee visits to the forum were insufficient to
establish general jurisdiction.  Helictoperos, 408 U.S. at 411,
418.  Pilatus's contacts with Pennsylvania are minimal compared

22

to those in <u>Helicopteros</u>.  Neither Pilatus nor its United States subsidiary, PilBAL, come close to having "systematic and continuous" contacts with Pennsylvania, and the Court will not exercise general jurisdiction over Pilatus.

III.  <u>Pilatus's Motion to Dismiss Cross-Claims</u>

      Defendants Rosemount Aerospace and Goodrich Corporation cross-claimed against Pilatus under Fed. R. Civ. P. 13.  Defs. Rosemount and Goodrich Corp. Answer to Cons. Compl. at 26-27. Pilatus moved to dismiss the cross-claims for lack of personal jurisdiction.  In their response, Rosemount and Goodrich Corporation said that they had cross-claimed based on contribution or indemnity, and that if the Court found that it did not have personal jurisdiction over Pilatus and dismissed Pilatus from the case, then they would pursue any claim for contribution or indemnity in the appropriate forum.  At oral argument, the parties agreed that the cross-claims were dependent on the outcome of Pilatus's primary motion to dismiss.  Oral Arg. Tr. at 52, Mar. 6, 2008.

      The Court has found that it does not have personal jurisdiction over Pilatus, and will dismiss the Rosemount and Goodrich Corporation cross-claims.

IV.  <u>The Plaintiffs' Motion to Transfer</u>

Two weeks after the Court heard oral argument on Pilatus's motion to dismiss, the plaintiffs moved to transfer the case to federal district court in Colorado under 28 U.S.C. § 1631, in the event that the Court determined that it lacked personal jurisdiction over Pilatus.[7]  Pls.' Mot. to Transfer Br. at 2.  The Court has found that it does not have personal jurisdiction over Pilatus, and so considers the motion to transfer.  The Court will deny the motion.

Section 1631 provides for transfer when the original court does not have jurisdiction.  When "a court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action . . . to any other such court in which the action . . . could have been brought at the time it was filed."  28 U.S.C. § 1631.  Section 1631 was intended to address situations where subject matter jurisdiction was lacking, but courts in the Third Circuit have allowed for transfer due to lack of personal jurisdiction.  See Jaffe v. Julien, 754 F. Supp. 49, 53 (E.D. Pa. 1991); Starline Optical Corp. v. Caldwell, 598 F. Supp. 1023, 1028 (D.N.J. 1984).  A court need not have personal jurisdiction over the defendants in

---

[7]     In its opposition to Pilatus's motion to dismiss, the plaintiff included a footnote that said:  "This action cannot be maintained in Colorado because the Colorado Long-Arm Statute does not confer jurisdiction over this action, where the aircraft was purchased in Massachusetts, kept in Rhode Island, and crashed in Pennsylvania."  Pls.' Opp. at 3 n.2.

order to transfer the case.  The burden is on the moving party to show that the transferee court has personal jurisdiction over all of the defendants.  <u>Selas Fluid Processing Corp. v. Spilman</u>, No. 04-591, 2006 WL 890818, at *4-5 (E.D. Pa. Apr. 3, 2006).

The proposed transferee court must have subject matter jurisdiction, proper venue, and personal jurisdiction over the defendants.  <u>See, e.g.</u>, <u>Grimsley v. United Eng'rs & Constructors, Inc.</u>, 818 F. Supp. 147, 148-49 (D.S.C. 1993); 17 James Wm. Moore et al., Moore's Federal Practice § 111.53 (3d ed. 2000) (noting that section 1631 has been interpreted in a similar fashion to the other transfer statutes, 28 U.S.C. §§ 1404 and 1406).  In order to prevail on their motion to transfer, the plaintiffs must establish that the District of Colorado would have general jurisdiction over all of the defendants.[8]  There is no specific jurisdiction in Colorado because the claim does not arise from the defendants' contacts with Colorado, and the plaintiffs do not claim that the Colorado court has specific jurisdiction.

_____

[8]     A plaintiff must be able to establish that personal jurisdiction exists over each defendant in the transferee district.  <u>Guillory v. Barrieau Moving</u>, No. 03-1105, 2004 WL 1393618, at *2 (D. Conn. June 21, 2004); 15 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3845 & n.21 (3d ed. 2007).  The plaintiffs do not mention the other defendants in their motion to transfer.  The Court need not address the issue of personal jurisdiction over the other defendants because it finds that the plaintiffs have not met their burden of showing that the District of Colorado has jurisdiction over Pilatus.

The plaintiffs claim that Colorado has general jurisdiction over Pilatus by virtue of its contact with Colorado both directly and through its subsidiary, PilBAL.  The plaintiffs also claim that general jurisdiction exists because PilBAL is the alter ego of Pilatus.  To support these contentions, the plaintiffs cite many of the same facts discussed above:  PilBAL is a wholly owned subsidiary of Pilatus; PilBAL is responsible for the sales of new PC-12 aircraft in the western Hemisphere; PilBAL is located in Broomfield, Colorado; Oscar Schwenk is the Chairman of the Board of Directors for both Pilatus and PilBAL; PC-12 aircraft are the most popular Pilatus planes; and PilBAL generates a significant proportion of Pilatus's revenue through sales in the United States.  Pls.' Mot. to Transfer Br. at 4-5.

It is undisputed that PilBAL is a wholly owned subsidiary of Pilatus and that it is located in Colorado. PilBAL, however, is not a defendant in this case.  Pilatus's own connections to Colorado are insufficient to meet the high standard of continuous and systematic contacts required for general jurisdiction.  The United States Court of Appeals for the Tenth Circuit has laid out factors to be considered in the analysis, including whether the defendant does the following in Colorado:  engages in business; is licensed to do business; owns, leases, or controls assets; maintains employees, offices, phone listings, or bank accounts; has shareholders; advertises or

solicits business; pays taxes; visits potential customers; recruits employees; and generates a substantial percentage of its national sales through revenue generated from in-state customers. Soma Med. Int'l v. Standard Chartered Bank, 196 F.3d 1292, 1295-96 (10th Cir. 1999).

Pilatus's only presence in Colorado is through its sale of PC-12 aircraft and spare parts to PilBAL.  Pilatus is not licensed to do business in Colorado, does not maintain employees there or pay taxes there, does not advertise or recruit employees there, and does not generate substantial revenue from sales to in-state customers.  Selling to a Colorado customer is not enough, by itself, to establish continuous and systematic contacts sufficient for general jurisdiction.  See Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 415-18 (1984) (finding no general jurisdiction in Texas over a foreign corporation that purchased more than 80% of its fleet from a Texas company over the course of seven years); Highline Capital Corp. v. Ahdoot, No. 06-2023, 2008 WL 486020, at *8 (D. Colo. Feb. 20, 2008) (holding that 60 business transactions over three years was insufficient to establish general jurisdiction and analogizing those business transactions to the purchases in Helicopteros).

The Court now turns to the question of whether Colorado can assert general jurisdiction over Pilatus through its

subsidiary, PilBAL.[9]  A parent company has a separate corporate existence and is treated separately from its subsidiary in the absence of circumstances justifying the disregard of the corporate entity.  <u>Quarles v. Fuqua Indus., Inc.</u>, 504 F.2d 1358, 1364-65 (10th Cir. 1974).  The mere presence of a wholly owned subsidiary in Colorado does not subject the absent parent corporation to jurisdiction when the two companies are operated as distinct entities.  <u>SGI Air Holdings II LLC v. Novartis Int'l, AG</u>, 192 F. Supp. 2d 1195, 1200 (D. Colo. 2002) (citing <u>Bolger v. Dail-A-Style Leasing Corp.</u>, 409 P.2d 517, 519 (Colo. 1996)).  The presumption of corporate separateness can be overcome only by clear evidence that the parent controls the subsidiary.  <u>FDIC v. First Interstate Bank of Denver, N.A.</u>, 937 F. Supp. 1461, 1466-67 (D. Colo. 1996) (citing <u>United Elec. Radio & Mach. Workers of Am. v. 163 Pleasant Street, Corp.</u>, 960 F.2d 1080, 1091 (1st Cir. 1992)).

In Colorado, these factors govern whether a subsidiary is an instrumentality of its parent:  (1) the parent corporation owns all or majority of the capital stock of the subsidiary; (2) the parent and subsidiary corporations have common directors or

---

[9]     The plaintiffs cite <u>Simeone v. Bombardier-Rotax GMBH</u>, 360 F. Supp. 2d 665 (E.D. Pa. 2005) for their alter ego analysis. In the motion to transfer the burden is on the plaintiffs to establish personal jurisdiction over the defendants in Colorado, not Pennsylvania, and the Court looks to Colorado law to determine whether PilBAL is an alter ego of Pilatus.

officers; (3) the parent corporation finances the subsidiary; (4) the parent corporation subscribes to all the capital stock of the subsidiary or otherwise causes its incorporation; (5) the subsidiary has grossly inadequate capital; (6) the parent corporation pays the salaries or expenses or losses of the subsidiary; (7) the subsidiary has substantially no business except with the parent corporation or no assets except those conveyed to it by the parent corporation; (8) in the papers of the parent corporation, and in the statements of its officers, "the subsidiary" is referred to as such or as a department or division; (9) the directors or executives of the subsidiary do not act independently in the interest of the subsidiary but take direction from the parent corporation; and (10) the formal legal requirements of the subsidiary as a separate and independent corporation are not observed.  Boughton v. Cotter Corp., 65 F.3d 823, 836 (10th Cir. 1995) (quoting Fish v. East, 114 F.2d 177, 191 (10th Cir. 1940)).

PilBAL is, as discussed above, a wholly owned subsidiary of Pilatus and is the exclusive United States distributor for Pilatus aircraft.  Pilatus and PilBAL have the same Chairman of the Board of Directors, and the former CEO of PilBAL later became the CEO of Pilatus.  The plaintiffs also claim that Pilatus and PilBAL have the same logo.  Pls.' Br. at 8; Def.'s Opp. at 13 n.4.  This is not enough to establish that

PilBAL is the alter ego of Pilatus.  There is no allegation that PilBAL is undercapitalized or that most of its business is with Pilatus, or that Pilatus finances PilBAL and pays its expenses, or that PilBAL's directors act on direction from Pilatus.  The overlap of one common officer and the fact that a parent owns all the stock in a subsidiary does not mean that the subsidiary is the alter ego of the parent.  Benton v. Cameco Corp., 375 F.3d 1070, 1081 (10th Cir. 2004) (finding that a common officer between a parent and its subsidiary was insufficient to overcome the presumption that the two corporations had separate corporate identities); SGI Air Holdings II LLC v. Novartis Int'l, AG, 192 F. Supp. 2d 1195, 1200 (D. Colo. 2002).

Pilatus, on its own, does not have the systematic and continuous contacts with Colorado that would subject it to general jurisdiction there.  The plaintiffs have not provided clear evidence that PilBAL is Pilatus's alter ego.  Therefore, the plaintiffs have not shown that Colorado can exercise jurisdiction over Pilatus and have not met their burden under section 1631.  The Court will deny the motion to transfer.

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


THERESA D'JAMOOS, as Executrix:     CIVIL ACTION
of the Estate of Dawn            :
Elizabeth Weingeroff, et al.     :
                                 :
v.                               :     NO. 07-1153
                                 :     CONSOLIDATED ACTION
PILATUS AIRCRAFT LTD., et al.    :


ORDER


AND NOW, this 30th day of April, 2008, upon
consideration of defendant Pilatus's motion to dismiss for lack
of personal jurisdiction, or alternatively, motion to dismiss for
failure to state a claim, motion for a more definite statement,
and motion to strike (Docket No. 36); Pilatus's motion to dismiss
defendants Rosemount and Goodrich Corporation's cross-claims for
lack of personal jurisdiction (Docket No. 41); and the
plaintiffs' motion to transfer to the District of Colorado
(Docket No. 58); IT IS HEREBY ORDERED that:


1.  Defendant Pilatus's motion to dismiss for lack of
personal jurisdiction is hereby GRANTED;

2.  Defendant Pilatus's alternative motion to dismiss
for failure to state a claim, motion for a more definite
statement, and motion to strike are hereby DENIED as moot;

3.    Defendant Pilatus's motion to dismiss the Rosemount and Goodrich Corporation cross-claims is hereby GRANTED;

4.    Plaintiffs' motion to transfer to the District of Colorado is hereby DENIED.

BY THE COURT:


_____    /s/ Mary A. McLaughlin
                                     MARY A. McLAUGHLIN, J.